IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

IN RE:  TIMIKIA LEANN SMITH, DEBTOR     CASE NO.: 1:09-bk-75616
    CHAPTER 13

TIMIKIA LEANN SMITH     PLAINTIFF

v.     AP NO.: 1:16-ap-07042

RUSHMORE LOAN MANAGEMENT     DEFENDANT
SERVICES, LLC

## MEMORANDUM OPINION

Before the court is a *Motion to Determine Extent and Validity of Lien or in the Alternative Motion to Declare Mortgage Satisfied* ("Complaint") filed by Timikia Leann Smith ("debtor") on June 20, 2016. Nationstar Mortgage, LLC ("Nationstar") filed an *Answer/Response to Motion to Determine Extent and Validity of Lien or in the Alternative Motion to Declare Mortgage Satisfied* ("Answer") on June 28, 2016.[1] Nationstar subsequently transferred its claim to Rushmore Loan Management Services, LLC ("Creditor"), resulting in the parties filing an *Agreed Motion to Substitute Defendant* on August 3, 2017. The *Agreed Motion to Substitute Defendant* recites that BAC Home Loan Servicing ("BAC") held the debtor's mortgage when she filed her current Chapter 13 proceeding. Thereafter, BAC transferred its claim to Nationstar in 2014, and Creditor succeeded to both in 2017.[2]

Also before the court is an *Objection to Claim* ("Objection") filed by the debtor on July 17, 2015, requesting that BAC's claim be denied. Nationstar filed a response on August 14,

---

[1] The debtor filed an amended complaint on October 5, 2016, to which Nationstar timely filed an answer. The debtor subsequently filed a second amended complaint withdrawing the expanded allegations, rendering the amended pleadings moot.

[2] Although the term "Creditor" defines a particular entity, it is a generic term that may also refer to the predecessors in interest of the current mortgage lien holder.

2015. The court heard the matters on August 9, 2017.[3] With the parties' consent, the court combined the matters for trial pursuant to Federal Rule of Bankruptcy Procedure 3007(b). At the conclusion of the trial, the court took the matter under advisement. For the reasons stated herein, the relief sought in the Complaint is granted, and the Objection is sustained. A separate judgment will be entered to this effect.

## I. Jurisdiction

This court has jurisdiction over this matter under 28 U.S.C. §§ 1334 and 157. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B), (K), and (L). The following opinion constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

## II. Findings of Fact

The debtor's confirmed and completed Chapter 13 plan provided for payment of the principal balance of her mortgage inside the plan. At the conclusion of her plan and at the time of discharge, the debtor believed her mortgage would be paid in full and Creditor's lien on the property released. In opposition, Creditor argues that it has no obligation to release its mortgage as its filed proof of claim controls regardless of the plan.

This is the debtor's second bankruptcy. Her treatment of Countrywide Home Lending ("Countrywide"), yet another predecessor in interest to Creditor, in her first case set the stage for the controversy in her current case. Specifically, in her first case (1:04-bk-78313), the Chapter 13 trustee distributed monthly mortgage payments of $439.73 to Countrywide based on a plan confirmed on June 3, 2005. (Ex. 1, at 1.) Countrywide received $24,950.27 over the life of the plan on a listed debt of $34,788.89. (Ex. 1, at 1.) Presumably, and by reference to the proof of

---

[3] On August 7, 2017, Creditor filed a *Motion for Summary Judgment* with supporting documents, and the debtor responded on August 8, 2017. Creditor withdrew its motion at trial.

claim filed in the debtor's current case, the $34,788.89 represented principal; unfortunately, the proof of claim filed in the first case was not introduced into evidence. The court dismissed the debtor's first bankruptcy case on October 20, 2009, because she fell behind on her payments. (Ex. 13, at 2.) Regardless, she made a considerable number of payments to Countrywide in her first bankruptcy over the course of her confirmed, but uncompleted, plan.

The debtor promptly filed her second, and current, Chapter 13 proceeding on November 5, 2009. (Ex. 2, at 1.) When she refiled, her then lawyer, Travis Starr, explained that she could subtract what she had paid in her previous bankruptcy from what she originally borrowed to determine the amount she needed to pay through her new plan. Apparently, her lawyer based his calculations on a claims report from the debtor's 2004 bankruptcy generated by the Chapter 13 trustee's office. The total amount paid through the debtor's first case, $24,950.27, deducted from the total amount of the mortgage claim, $34,788.89, resulted in a balance of $9,838.62. (Ex. 1, at 1.) This calculation and reasoning is patently incorrect if the $34,788.89 figure represented principal and the $24,950.27 figure represented payments against principal *and* interest. The debtor, however, relied on her lawyer's advice and believed that by filing a second bankruptcy case and making plan payments to Creditor totaling $9,838.62 that she would pay off her mortgage. The court has no reason to discredit her belief, however misguided.

The debtor's ill-founded calculation is reflected in her schedules. On her Schedule A, the debtor listed a fifty-percent interest with her husband in a "3BR/1BA Brick home & city lot @ 401 W. Long" valued at $15,000 with a secured claim of $9,838.62, the resulting balance of her

3

lawyer's calculation.[4] (Ex. 2, at 9.)  The debtor also included Countrywide on her Schedule D as a creditor having a claim of $9,838.62 secured by the residence. (Ex. 2.)

The debtor's *Chapter 13 Narrative Statement of Plan*, however, incongruously categorized Countrywide's debt as a long-term debt with regular payments of $439.73 and an arrearage of $9,839.00 (presumably rounding off the $9,838.62 figure) to be paid at a rate of $12.00 per month. (Stip. Facts at ¶ 2; Ex. 3, at 2.)  A principal amount was not referenced.  Neither party proffered or elicited any testimony explaining why this initial plan treated the purported *principal* debt of $9,838.62 as an "*arrearage*" to be paid at $12.00 a month associated with an unspecified "long-term debt" addressed by monthly payments of $439.73.

In response to this treatment, on February 12, 2010, BAC, as the mortgage lien holder, filed its *Objection to Plan Prior to Confirmation* ("Objection to Confirmation") objecting to the plan treatment proposed for Countrywide.  (Ex. 4.)  BAC alleged that its prepared, but apparently unfiled, proof of claim reflected pre-petition arrears of $1,588.81 rather than the $9,839.00 amount provided for in the debtor's proposed plan.  (Stip. Facts at ¶ 3; Ex. 4, at 1.)  BAC objected to the plan because the monthly payment of $12.00 to cure the pre-petition arrearage was inadequate to completely cure the arrears over the course of the proposed plan. (Stip. Facts at ¶ 3; Ex. 4.)  The objection stated that "[t]he Debtor should be required to amend her Plan to cure those pre-petition arrears cited in BAC Home Loans Servicing, LP's Secured Proof of Claim ($1,588.81) within sixty (60) months of confirmation of the subject Plan by – accordingly – increasing the maintenance payment to the Chapter 13 Trustee." (Ex. 4, at 2.)

---

[4] Only the debtor signed the Note, while both she and Anthony L. Smith signed the Mortgage.  (Stip. Facts ¶ 14; Rushmore Ex. 10, at 5, 15.)

4

The debtor filed a plan modification on February 18, 2010, with a notice of opportunity to object.[5] (Ex. 5.) The modification maintained the same plan length, sixty months, but it reduced the monthly plan payment from $575.00 to $450.00. (Ex. 3, at 1; Ex. 5, at 2.) The modification also changed the treatment of existing creditors, including Countrywide:

> This creditor's secured claim shall be paid through the debtor's plan as a short-term claim that shall not extend beyond the length of the plan. The remaining principal debt of $9,878 shall be paid in full at 0% interest in monthly installments of $197.56. The arrearage claim of $1,588.81 shall be paid in full by monthly installments of $32.00. Creditor shall file a proof of claim showing the principal amount of indebtedness and the pre-petition arrearage.

(Stip. Facts ¶ 4; Ex. 5, at 2–3.) Significantly, Countrywide's treatment (1) changed categories from a "long term debt" to a "short-term claim"; (2) reflected the $9,839.00 figure as principal instead of as an "arrearage," a treatment consistent with the debtor's schedules but not the original plan; (3) introduced a slight and unexplained adjustment of the $9,839 figure to $9,878; and (4) incorporated the $1,588.81 arrearage figure set forth in the Objection to Confirmation. (Ex. 5.) Again, the parties did not produce or elicit any comprehensive explanation for these changes other than the Objection to Confirmation. In addition, the plan required Countrywide to file a proof of claim reflecting the "principal amount of indebtedness and the pre-petition arrearage." (Ex. 5, at 2–3.) The Chapter 13 trustees in this jurisdiction will not make payments

---

[5] The debtor testified that BAC had an opportunity to object to the proposed terms of the plan; however, the amended plan "does not reflect 'BAC Home Loans Servicing, LP' anywhere in the body of the plan, the Certificate of Service or the Creditor Matrix attached to the Amended Plan." (Stip. Facts at ¶ 5.) Rather, the plan and creditors matrix reference "Countrywide Home Lending." (Stip. Facts at ¶ 6; Ex. 5.) Despite the discrepancy between Countrywide, the named and noticed creditor, and BAC, the creditor that filed the Objection to Confirmation, BAC's decision to withdraw its Objection to Confirmation evidences that it had notice of the modification and an opportunity to review the plan. Further, Creditor did not contend in its pleadings or at trial that it, or its predecessor, did not receive notice of the original or modified plan.

5

on a claim unless a proof of claim is filed in the case. Countrywide nor BAC filed a proof of claim before confirmation.

The court set BAC's Objection to Confirmation for hearing on April 20, 2010; thereafter, the parties requested two continuances.[6] (Stip. Facts at ¶ 7; Ex. 13, at 6.)  Then, without a hearing, BAC withdrew its Objection to Confirmation on August 23, 2010. (Stip. Facts at ¶ 8; Ex. 6.)  In its Answer, Creditor admitted that the Objection to Confirmation was withdrawn "by agreed order." (Answer, June 28, 2016, ECF No. 6, at ¶ 6.)  The debtor's plan was confirmed on the same date. (Stip. Facts at ¶ 8; Ex. 7.)  Creditor or its predecessor had a fair, full, and complete opportunity to object to the original plan and the modified plan and, without any explanation offered at trial, withdrew its original objection and allowed a modified plan to be confirmed that was very specific in the principal and arrearage amounts, commensurate interest rate, and treatment of the creditor's claim.

Although the confirmed plan outlined specific figures and treatment for Creditor, BAC subsequently filed a secured proof of claim for a greater amount. (Rushmore Ex. 10.)  BAC's claim set out a total indebtedness of $32,603.44, an arrearage of $1,588.81, a total monthly payment of $439.73, and an interest rate of 8.00%.[7] (Stip. Facts at ¶ 11.)  The itemization breaks down the total indebtedness as: "Principal Balance of $31,894.09; Escrow Shortage of $211.14; Prior Bankruptcy Fees of $425.00; Property Inspections of $434.00; Current Bankruptcy Attorney Fees of $350.00." (Stip. Facts at ¶ 12; Rushmore Ex. 10.)

---

[6] Although these continuances could have been requested to allow BAC time to review its records and evaluate the modified terms of the plan, Creditor's representative testified at trial that the continuances could have been for any number of reasons.

[7] BAC attached copies of the Note and Mortgage, both dated August 28, 2002, to Claims 16 and 17. (Stip. Facts at ¶ 13.)  The loan terms provide for a principal amount of $34,500 to be charged at 8.000% interest. (Rushmore Ex. 10, at 4.)  The "Amount of Monthly Payments" is listed as $253.15. (Rushmore Ex. 10, at 4.)  The terms of the Note provide that the maturity date is September 1, 2032. (Rushmore Ex. 10, at 4.)

6

In support of its argument that the subsequently filed proof of claim controls over the plan, Creditor emphasizes three facts. First, Creditor focuses on the last sentence of the plan modification, which provides that the "[c]reditor shall file a proof of claim showing the principal amount of indebtedness and the pre-petition arrearage," to support its argument that the proof of claim is controlling. (Ex. 5, at 3.) Creditor's representative, Mike Aiken, testified that, in normal practice, this language requires a creditor to file a proof of claim reflecting the accurate amount of the underlying debt, and the agreed arrearage amount will be treated in the plan.

Second, Creditor points to the last sentence in the confirmation order entered on August 23, 2010:

> [Whenever the plan confirmed by this order refers to the debt, debts, claim or claims of creditors, such reference shall be construed to mean allowed claim or allowed claims.] The total amount of an allowed claim shall be the amount stated on a proof of claim properly filed by or on behalf of such creditor, unless the Court determines a different amount following the filing of an objection to such claim.[8]

(Ex. 7.)

Third, Creditor notes the "Other Provisions" section of the original plan that provides "[i]n the event a secured claim is allowed which is not provided for in the plan, then the trustee shall pay such creditor in full after this plan has in all other respects been completed." (Stip. Facts ¶ 9.) Creditor did not expound on the significance of this provision. However, if and to the extent Creditor seeks to differentiate its claim from that of Countrywide, the evidence of claim transfers and testimony confirm that Countrywide was indeed the predecessor in interest to Creditor. Thus, Creditor's successor claim was "provided for in the plan." Matthew Black, a

---

[8] The parties' stipulated facts only reference the second sentence of the quoted paragraph of the confirmation order; however, the first sentence is included for context. (Stip. Facts at ¶ 10.)

7

staff attorney for the Chapter 13 trustee, testified that the debtor made every payment required under her confirmed plan.

### III. Discussion

In her Complaint, the debtor sought declaratory relief—a finding that her mortgage was satisfied—because she made all of the payments to Creditor required by her plan based on an "agreed" principal balance amount and arrearage figure. (Complaint, June 20, 2016, ECF No. 1, at ¶ 5.) The debtor's Objection expanded on her argument, alleging that the confirmed Chapter 13 plan is "binding" pursuant to 11 U.S.C. § 1327 and that BAC's proof of claim was contrary to an agreement reached between the parties and memorialized in the confirmed plan. (Ex. 4.) Creditor generally denied that the plan proposed to pay an agreed principal balance and asserted that the lien remains on the residence even after the debtor receives a discharge.

Neither party suggested that the current controversy is the result of a mistake, either mutual or unilateral. The record is devoid of any allegations of fraud by the parties or on the court. Thus, the issue is whether, in the absence of any subsequent or collateral attack on the validity of a confirmation order, the clear and specific terms of a confirmed plan and commensurate confirmation order govern over a subsequently filed and inconsistent proof of claim. In this instance and based upon the unique facts and circumstances present in this case, the answer is yes.

#### A. 11 U.S.C. § 1327–Effect of Confirmation

Section 1327 of Title 11 sets forth the effect of Chapter 13 plan confirmation, including the binding nature of the plan: "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a)

8

(2017). Therefore, once final, the plan essentially has a res judicata effect, and it "represents a binding determination of the rights and liabilities of the parties as ordained by the plan." 8 COLLIER ON BANKRUPTCY ¶ 1327.01 (Alan N. Resnick & Henry J. Sommers eds., 16th ed. 2014) (citations omitted).

### B. Case Law

In *United Student Aid Funds, Inc. v. Espinosa*, the United States Supreme Court emphasized the final and binding nature of confirmation orders, even when a plan contravenes the bankruptcy code. 559 U.S. 260 (2010). The debtor in *Espinosa* filed a Chapter 13 plan that proposed to discharge accrued interest on a student loan debt. *Id*. at 264. The student loan creditor received notice of the proposed plan but did not object to the treatment of its debt or the proposed discharge of a portion of the debt without an undue hardship determination. *Id*. at 265. Instead, the creditor filed a proof of claim evidencing the total amount of its debt, "both the principal and the accrued interest," and the plan was confirmed. *Id*. Over the life of the plan, the debtor paid his principal student loan debt in full, and the court discharged the remaining interest. *Id*. at 265–66.

Three years later, the United States Department of Education tried to collect the unpaid interest. *Id*. at 266. Eventually, United filed a motion pursuant to "Federal Rule of Civil Procedure 60(b)(4) seeking to set aside as void the Bankruptcy Court's 1993 order confirming Espinosa's plan." *Id*. The Court found that the confirmation order was a final judgment. *Id*. at 269 (citation omitted). The Court additionally held that Rule 60(b)(4) relief was inappropriate in this case, where the creditor received notice of the plan and did not object.

> Given the Code's clear and self-executing requirement for an undue hardship determination, the Bankruptcy Court's failure to find undue hardship before confirming Espinosa's plan was a legal error. But the order remains

9

>   enforceable and binding on United because United had notice of the error and failed to object or timely appeal.

*Id*. at 275–76 (internal citation omitted). Despite the inclusion of an improper provision, the Court noted the significance of finality when a party has been "notified of a plan's contents and fails to object to confirmation of the plan before the time for appeal expires, that party has been afforded a full and fair opportunity to litigate, and that party's failure to avail itself of that opportunity will not justify Rule 60(b)(4) relief." *Id*. at 276.

Since *Espinosa*, courts have tried to reconcile the decision with the realities of the Chapter 13 plan confirmation process.[9] Case law within the Eighth Circuit has acknowledged the res judicata effect of a confirmed plan and has permitted secured claims to be valued as part of the confirmation process both before and after *Espinosa*. In *In re Ramey*, the court noted that "[t]o deny preclusive effect to a confirmation order invites the chaos reflected in the cases. . . . If a creditor fails to object to treatment of its claim in the plan, the creditor will suffer the consequences."[10] 301 B.R. 534, 545 (Bankr. E.D. Ark. 2003) (citations omitted). *See also Impac Funding Corp. v. Simpson (In re Simpson)*, 240 B.R. 559, 562 (B.A.P. 8th Cir. 1999) ("The debtors' plan lists IMPAC as a creditor and plainly treats the debt to IMPAC. IMPAC did not appeal from the order confirming the debtors' plan and it is now a final and unappealable order. IMPAC cannot now raise issues it could have and should have raised by objecting to

---

[9] Some courts have done this by adopting local rules or procedures to diminish the risk that "illegal plans" will be confirmed. *See In re Butcher*, 459 B.R. 115, 120 (Bankr. D. Colo. 2011); *In re Smith*, No. 12-10142, 2013 WL 665991, at *4–5 (Bankr. D. Vt. Feb. 22, 2013). These rules generally require debtors to amend their plan or object to a timely filed secured proof of claim providing a higher amount, or different treatment, than provided for in the confirmed plan. *Id*. This jurisdiction does not have a local rule in this regard. The provisions of the Confirmation Order will be discussed *infra*.

[10] This case did not involve the exception in 11 U.S.C. § 1322(b) for claims secured only by a security interest in the debtor's principal residence. *Id*. at 538–39. In the case at hand, the Chapter 13 plan technically cannot modify the creditor's treatment in the ways discussed in the *Ramey* opinion.

confirmation and in appealing the confirmation order."). The court in *Ramey* stated that "[i]t is well settled that an order need not correctly apply the law to be given preclusive effect." *Id*. at 544 (citations omitted). *See also Burnett v. Burnett (In re Burnett)*, 646 F.3d 575, 581 (8th Cir. 2011) (noting that "a confirmed plan is given *res judicata* effect *even when* it violates the code").

Other courts have come to the same, or similar, general conclusion. In *In re Franklin*, a "mortgage creditor sought relief from the claim bar date" after belatedly filing a proof of claim in the debtor's case post-confirmation. 448 B.R. 744, 746 (Bankr. M.D. La. 2011). The untimely filed proof of claim provided a pre-bankruptcy arrearage amount that differed from the amount provided by the debtor in the confirmed plan. *Id*. The court found that *Espinosa* required a new analysis—"the confirmed chapter 13 plan binds [the creditor] because it had notice of the case well before confirmation and plainly in time to file a proof of claim and take other steps to protect its interest." *Id*. at 748.

The *Franklin* decision has been cited by other courts acknowledging the importance of debtors being able to "deal" with secured creditors through the plan process when the creditor has adequate notice:

> Secured creditors are protected by their liens to the extent provided in the plan. It is well established that secured creditors will not forfeit their liens if they merely fail to file a proof of claim. It is equally well established that when there is specific notice of the treatment of a secured creditor's claim in a proposed plan, the plan confirmation process may function to determine the secured claim and its treatment. The critical factor is whether the creditor has notice of the specifics of its treatment and of what is at stake for it. This provides debtors with an effective way of dealing with secured creditors and providing for such creditors even if they do not file a claim.

*In re Kitzerow*, No. 15-13449-13, 2017 WL 499886, at *4 (Bankr. W.D. Wis. Feb. 7, 2017) (citing Susan V. Kelley, *Ginsberg & Martin on Bankruptcy* § 15.03[G]; *Shelton v. Citimortgage, Inc.* (*In re Shelton*), 735 F.3d 747, 748 (8th Cir. 2013); *Green Tree Fin. Serv. Corp. v. Karbel* (*In*

11

*re Karbel*), 220 B.R. 108, 113 (B.A.P. 10th Cir. 1998); *In re Tirone*, No. 11-31883, 2012 WL 3249551, at *4 (Bankr. N.D. Ohio 2012); *In re Franklin*, 448 B.R. 744, 747 (Bankr. M.D. La. 2011); *In re Harvey*, 213 F.3d 318 (7th Cir. 2000)). Even when a "confirmed plan 'stripped' [a] mortgage to the value of property set forth in the plan," a creditor is bound by that plan when it failed to object until the debtors moved to modify the confirmed plan under 11 U.S.C. § 1329. *In re Koppenhaver*, 555 B.R. 463, 463–64 (Bankr. M.D. Penn. 2016).

Notice to the creditor is an imperative part of this analysis. The *Ramey* court acknowledged that if notice to the creditor is "so insufficient that it violates due process of law," then the principles of res judicata should not apply. 301 B.R. at 545 (citations omitted). "Due process requires notice 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Espinosa*, 559 U.S. at 272 (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Jones v. Flowers*, 547 U.S. 220, 225 (2006)). In *Espinosa*, the Court acknowledged that "Rule 60(b)(4) does not provide a license for litigants to sleep on their rights." *Id.* at 275. The creditor had "actual notice" of the debtor's "plan, its contents, and the [court's] subsequent confirmation of the plan." *Id.* The creditor also filed a proof of claim in the case, "thereby submitting itself to the Bankruptcy Court's jurisdiction with respect to that claim." *Id.* (citation omitted). When a "confirmed plan treats [a] creditor, and if the creditor received proper notice of the plan and its proposed confirmation, the creditor's only potential remedy for a plan it doesn't like is to appeal the order of confirmation." *Simpson*, 240 B.R. at 562.

When the plan's treatment of a creditor is ambiguous or lacks specificity, an issue relating to notice can arise. In *United States v. Monahan* (*In re Monahan*), the creditor "[did] not dispute that it received notice of the filing of the Amended Plan. However, unlike *Espinosa*, the

12

confirmed plan in this case did not provide for the discharge of the priority tax claim upon completion of the plan." 497 B.R. 642, 651 (B.A.P. 1st Cir. 2013). In *Monahan*, the debtor's plan proposed to pay a priority tax claim in full but did not clearly state that the claim, or any accrued postpetition interest, would be discharged upon plan completion. *Id.* at 644–45. In the court's perspective, these facts distinguished *Monahan* from *Espinosa*. The court noted that "in the context of plan confirmation," the due process requirements for notice mean a "clear, open, and explicit statement of a secured creditor's treatment in a chapter 13 plan before the creditor's failure to object will be deemed implied acceptance" in the First Circuit. *Id*. at 652 (citing *Flynn v. Bankowski* (*In re Flynn*), 402 B.R. 437, 444 (B.A.P. 1st Cir. 2009); *In re Rheaume*, 296 B.R. 313, 321 (Bankr. D. Vt. 2003)).

### C. Analysis

In the case at hand, Creditor or its predecessor had an opportunity to object to the original plan and the modified plan. The creditor objected to the original plan. That objection was set for a hearing post-modification, which provided an adequate vehicle to contest the plan as modified. Of equal significance, the creditor chose to withdraw its objection and allowed a modified plan to be confirmed that was very specific as to the principal, arrearages, commensurate interest rate, and treatment of Creditor's claim. At trial, the parties offered no real explanation as to why the creditor withdrew its objection other than an acknowledgment in the Answer that the withdrawal was by "agreed order." (Answer, June 28, 2016, ECF No. 6, at ¶ 6.)

As in *Espinosa*, this case presents a confirmed Chapter 13 plan that treats a creditor's claim in an impermissible manner. A Chapter 13 plan may modify the rights of secured creditors except to the extent the creditor's claim is secured "only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2) (2017). Consonant with this

13

provision, a plan may also "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any . . . secured claim on which the last payment is due after the date on which the final payment under the plan is due[.]"  11 U.S.C. § 1322(b)(5) (2017).  An exception comes into play when the last mortgage payment is due before the last plan payment is to be made.

> Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title.

11 U.S.C. § 1322(c)(2) (2017).

In this case, the section 1322(c) exception is simply inapplicable.  The Note matures September 1, 2032, a significant period of time after completion of the debtor's proposed sixty-month plan.  (Rushmore Ex. 10, at 4.)  Therefore, the modification of Creditor's rights, as a secured creditor with a claim secured only by the debtor's principal residence, did not meet the statutory requirements for confirmation.  11 U.S.C. § 1325(a)(1).

Although the treatment is improper, it is difficult to ascertain how the result in this case is significantly different than that in *Espinosa*.  The Creditor's treatment does not spontaneously render the confirmed plan unenforceable.  The confirmation order is a final judgment, which Creditor did not appeal and has not attacked since it was entered on August 23, 2010. (Ex. 7.) The confirmed plan explicitly outlines the modified terms—"[t]he remaining principal debt of $9,878 shall be paid in full at 0% interest in monthly installments of $197.56.  The arrearage claim of $1,588.81 shall be paid in full by monthly installments of $32.00."  (Ex. 5, at 3.) Pursuant to 11 U.S.C. § 1327 and relevant case law, if Creditor was afforded notice of the modification and failed to object, or, as here, objected but withdrew its objection and waived a

14

hearing on the plan as modified, the terms of the confirmed plan "bind" both the debtor and Creditor despite the improper treatment.

Creditor asserts that the language in the modified plan entitled Creditor to file a proof of claim, which it did, reflecting a higher and contradictory principal balance. Creditor argues that its proof of claim is controlling despite the specific treatment provided in the confirmed plan. This argument fails for two complimentary reasons. First, Creditor had yet to file a proof of claim, and, as noted by this court, Chapter 13 trustees in this jurisdiction will not distribute plan payments to a creditor unless a claim is filed. The referenced plan provision merely implements that procedure. Second, if this was true, it seems there would be no reason to outline with such specificity a "remaining principal debt" figure, $9,878, or an arrearage claim amount, $1,588.81, in the plan provision with a proposed treatment of both. (Ex. 5.)

Further, rather than objecting to confirmation of the modified plan or proceeding on its objection to the original plan, a suitable vehicle to have a hearing and subject both the plan and modification to scrutiny, Creditor withdrew its Objection to Confirmation and allowed confirmation. Section 1326(a)(2) provides that "[i]f a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as practicable." 11 U.S.C. § 1326(a)(2) (2017). Despite this requirement and as the court previously noted, Chapter 13 trustees in this jurisdiction will make payments on a claim only if a proof of claim is filed. Although the subsequently filed proof of claim asserts a greater principal balance, Creditor did not object to the specific treatment of its debt in the confirmation process. The debtor proceeded through her plan, made her payments accordingly, and believed that she would own her home outright at the end of the plan. Although this outcome results in an apparent inequitable result

benefitting the debtor, the Creditor's claim does not trump the terms or treatment provided in the confirmed plan.

If Creditor thought its treatment in the plan was patently incorrect or ambiguous, it had an opportunity to litigate and attempt to rectify its treatment prior to confirmation. The debtor reads the relevant plan provision to say that Creditor was required to file a proof of claim mirroring the amounts provided for in the plan, so as to permit distribution, while Creditor argues that the language required it to file a proof of claim reflecting accurate figures. Although the plan does not specifically state that the lien will be released or that any remaining debt will be discharged, it more significantly provides that the full debt—principal, interest, and arrearages—will be paid over the life of the plan. Therefore, when the debtor completed the plan payments, her mortgage should be satisfied.

Regarding notice, the facts as presented confirm that Creditor's predecessor in interest, BAC, had notice of the plan modification when it was filed. BAC objected to the original plan. Although the plan modification did not reference BAC nor was BAC listed on the creditors matrix attached to the modified plan or the notice of opportunity to object, BAC objected to the plan's treatment of Countrywide, its predecessor in interest, agreed to continuances of the confirmation hearing, and withdrew its objection to the original plan *after* the modification was filed. (Ex. 5.) Considering that a lawyer objected to the plan, eventually withdrew that objection, and filed a claim on its behalf, BAC not only participated in the case but had actual notice of the plan modification and its specific treatment therein. Creditor's predecessor in interest had a fair and full chance to litigate this issue prior to confirmation.

Creditor also argues that a provision in the confirmation order provides that a creditor's proof of claim establishes any debt regardless of the plan. Specifically, confirmation orders in

16

this jurisdiction contain a sentence—emphasized by Creditor—which states: "[t]he total amount of an allowed claim shall be the amount stated on a proof of claim properly filed by or on behalf of such creditor, unless the Court determines a different amount following the filing of an objection to such claim." (Stip. Facts ¶ 10.) This argument fails in two respects. First, the plan confirmation process provides an adequate and suitable alternative to the claims objection process particularly when as here, the affected party's claim is treated with exactness and that party fully participates in the confirmation process.

> It would be nice if the Bankruptcy Code and Rules prescribed a unitary procedure for fixing value, determining the extent of liens, confirming plans and allowing claims, but these processes are at once separate and inextricably intertwined in a Chapter 13 case. Courts such as the Fourth Circuit that have declared bright-line rules for the ascendancy of one or another procedure immediately encounter the reality of the next case in which an awkward exception or inconsistency reveals that more is going on than just picking among procedures. These courts are asking the wrong question. The issue is not, which procedure trumps another? The issue is, did the creditor have sufficient notice of the plan and opportunity to object such that confirmation has the effects described in § 1327(a), (b) and (c)?
> . . . [I]f notice was adequate and the procedural due process rights of the secured claim holder are respected, a bankruptcy court order fixing the value of collateral, determining the allowed amount of a secured claim or defining what the secured claim holder will receive in satisfaction of its lien rights is binding on all parties without regard to the label on the process.

KEITH M. LUNDIN & WILLIAM H. BROWN, CHAPTER 13 BANKRUPTCY § 233.1 (4th ed. 2004) (footnotes omitted).

Second, the confirmation order provision must be read in context. The entire applicable provision provides:

> Whenever the plan confirmed by this order refers to the debt, debts, claim or claims of creditors, such reference shall be construed to mean allowed claim or allowed claims. The total amount of an allowed claim shall be the amount stated on a proof of claim properly filed by or on behalf of such creditor, unless the Court determines a different amount following the filing of an objection to such claim.

(Ex. 7.) Read in that context, the Creditor's argument fails. Chapter 13 plans frequently refer to many claims in a generic and unspecified manner. Examples are a reference to "all unsecured claims" or treatment of a debt merely as long-term with a reference solely to payment of arrearages. In that context, proofs of claim should establish the amount of the debt unless objected to in a typical claims objection manner. However, in this instance, the debtor alternatively used the plan confirmation process to outline a specific and exact treatment of this Creditor's claim.

When the confirmation order provision is read in its entirety, it refers to those claims treated generally in the plan rather than those for which a specific treatment is proposed. The debtor's plan terms were not ambiguous as to how Creditor's claim would be treated. Creditor is bound by the confirmed Chapter 13 plan and the inevitable consequences that follow absent a successful appeal or attack on the confirmation order itself.

## IV. Conclusion

The debtor complied with the terms of the confirmed plan in this case, and her requested relief is granted. The Creditor is directed to take such steps as are necessary to effectuate the release of its lien.

IT IS SO ORDERED.

Dated this 26th day of October, 2017.

_____
HONORABLE RICHARD D. TAYLOR
UNITED STATES BANKRUPTCY JUDGE

cc:  Timikia Leann Smith
     April N. Kersten
     Brien Garrett Saputo
     Jack W. Gooding, Chapter 13 Standing Trustee